UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EUNICE DARKO,

                              Petitioner,

                -against-

JEFF SESSIONS, in his official capacity as Attorney General, U.S. Department of Justice; KIRSTJEN M. NIELSEN, in her official capacity as Secretary, U.S. Department of Homeland Security; THOMAS DECKER, in his official capacity as Field Office Director, New York City Field Office, U.S. Immigration & Customs Enforcement; DIANE MCCONNELL, in her official capacity as Assistant Field Office Director, New York City Field Office, U.S. Immigration & Customs Enforcement; and RONALD EDWARDS, in his official capacity as Director, Hudson County Correctional Center,

                              Respondents.

**OPINION AND ORDER**

18 Civ. 5675 (ER)

---

Ramos, D.J.:

      Eunice Darko, a citizen of Ghana, was detained pending potential removal pursuant to Title 8, United States Code, Section 1226(a). She was detained following an individualized bond hearing at which she bore the burden of proving that she was not a flight risk or a danger to the community. The bond hearing was presided over by an Immigration Judge ("IJ"), whose decision was affirmed by the Board of Immigration Appeals ("BIA"). Ms. Darko, who has no criminal convictions, has now been detained from March 18, 2018, to the present day. She brings the instant Petition pursuant to 28 U.S.C. § 2241, challenging the constitutionality of her detention, and specifically, the requirement that she bear the burden of establishing her right to be released on bond. The question thus presented is whether the Due Process Clause of the Fifth

Amendment required that the Government bear the burden of justifying her detention. Joining with a growing body of persuasive authority, the Court concludes that the Due Process Clause required that the Government bear the burden of proving that Ms. Darko's detention was justified, and that it was required to meet its burden by clear and convincing evidence. Accordingly, Ms. Darko's Petition is GRANTED.

**I.      FACTUAL BACKGROUND**

Ms. Darko is a 43-year old citizen of Ghana. Doc. No. 1 ("Pet'n") ¶ 20. She entered the United States on June 11, 2011, on a nonimmigrant visa and overstayed the visa, remaining in the country ever since. *Id.* On September 23, 2015, she married Peter Amoako, a naturalized U.S. citizen who also was from Ghana. *Id.* ¶¶ 20, 21. The two lived in the Bronx along with Mr. Amoako's three teenaged children from a previous marriage. *Id.* ¶ 20. On December 20, 2017, Mr. Amoako filed a Petition for Alien Relative for Ms. Darko with the U.S. Citizenship and Immigration Services ("USCIS"), in order to adjust her status as a lawful permanent resident. Pet'n Ex. F, at 59.

On January 22, 2018, Ms. Darko was arrested on misdemeanor charges of "excessive corporal punishment" of her three stepchildren, and was released on her own recognizance. Pet'n ¶ 22. The charges were subsequently dismissed on April 23, 2018 due to "a lack of corroboration and cooperation" from the stepchildren, and the matter was sealed. *Id.* However, on February 8, 2018, the New York Administration of Children's Services commenced an action against Ms. Darko in Family Court on the basis of neglect arising from the same incidents of excessive corporal punishment. *Id.* ¶ 24.

Meanwhile, on January 30, 2018, Ms. Darko was mailed a Department of Homeland Security form G-56, entitled "Call-in-Letter," requesting that she appear at their offices in New

York City on March 8, 2018 at 9:00 a.m., in connection with an "official matter." *Id.* ¶ 25. When she arrived at the appointed time and place, she was detained. *Id.* ¶ 26. At that time, she was first given a Notice to Appear advising her that removal proceedings had been commenced against her pursuant to § 240 of the Immigration and Nationality Act. *Id.* Ex. B.

Ms. Darko had her first Master Calendar Hearing and Custody Redetermination Hearing on May 10, 2018, two months after her initial detention. Pet'n ¶ 27. At that time, after hearing from the parties and reviewing 67 pages of evidence, the IJ adjourned the bond proceeding for two weeks, until May 24, 2018, in order to receive and review additional information concerning the open Family Court matter. *Id.* ¶¶ 28–29.

Prior to the adjourn date, on May 18, 2018, Ms. Darko settled the Family Court matter by agreeing to a finding of neglect by excessive corporal punishment by hitting the children on the hands with a belt on one occasion, and by telling the two older children to hit the younger one on the hands with a belt on another occasion. *Id.* ¶ 30. The Family Court also modified a previously entered order of protection so as to allow Ms. Darko to return home to live with the family on certain conditions. *Id.*

Ms. Darko submitted an additional 35 pages of evidence in connection with the second bond hearing, which took place on May 24, 2018. *Id.* ¶ 31. The IJ ultimately denied the bond, finding that Ms. Darko had not "met her burden of proof." Return to Habeas Petition ("Return"), Doc. 8 Ex. 2, transcript of bond hearing at 11. The IJ noted that she had read Ms. Darko's documentation "very closely," but that the allegations against her by the stepchildren were "incredibly disturbing," and "too serious." *Id.* On June 15, 2018, the IJ issued a Memorandum Decision further explaining her reasons for denying the bond. Pet'n Ex. K. In it, she expressly relied on BIA precedent that places on aliens subject to bond under the INA the burden of

establishing that he or she is not a "threat to national security, a danger to the community at large, [or] likely to abscond[.]" *Id.* at 1-2. The IJ noted that while the misdemeanor criminal charges were dismissed, she gave "substantial weight" to the Family Court petition, including allegations to which Ms. Darko did not admit. Specifically, the IJ referenced that Ms. Darko allegedly required the two male children to show her their private parts, causing them great embarrassment, caned and belted the three children on their hands on more than one occasion, and, on one occasion, punched one child in the temple with a closed fist. *Id.* at 2-3. The IJ concluded: "Due to the serious allegations of misconduct against [Ms. Darko], she has failed to establish that she does not pose a risk of danger to the community." *Id.* at 2.

Ms. Darko filed a Notice of Appeal to the BIA to appeal the denial of the bond on June 1, 2018. Pet'n Ex. H. On June 18, 2018, Ms. Darko moved for bond reconsideration due to materially changed circumstances as a result of Mr. Amoako's need to travel to Ghana to care for his ailing father. Pet'n ¶ 40. The motion was denied. *Id.* On September 24, 2018, the BIA dismissed Ms. Darko's appeal of the IJ's denial of bond. *See* Doc. 14 Ex. A, Decision of the Board of Immigration Appeals. As relevant to this Petition, the BIA noted that the correct standard a detainee is required to meet to sustain her burden at a bond hearing is preponderance of the evidence. *Id.* at 1.

On August 27, the IJ held a merits hearing on Ms. Darko's application for adjustment of status, which application had been filed by Mr. Amoako in December of 2017. Doc. 13. At the conclusion of the hearing, the IJ denied the application. *Id.* Ms. Darko has filed a notice of appeal of that decision and is awaiting a briefing schedule. *Id.* She remains detained.

## II. DISCUSSION

Ms. Darko argues, among other things,[1] that the bond hearing she received violates the Due Process Clause of the Fifth Amendment because it placed upon her the burden of establishing her entitlement to a bond. As described below, the Court agrees with Ms. Darko and grants the Petition.

### A. Statutory Framework

Ms. Darko is detained under 8 U.S.C. § 1226(a). Pursuant to that provision, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). When the alien is not a criminal alien, as is the case here, the Attorney General may continue to detain her or may release her either on "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General" or on "conditional parole." *Id.* § 1226(a)(1)–(2). After Immigration and Customs Enforcement makes the initial decision to detain an alien, the alien may request a custody redetermination hearing from an IJ at any time before a removal order becomes final. 8 C.F.R. § 236.1(d)(1). The IJ's bond decision is appealable to the BIA. 8 C.F.R. § 1003.19(f).

Importantly, § 1226(a) does not indicate whether the government or the alien bears the burden of proof at a custody redetermination hearing and what amount of evidence would satisfy that burden. *See* 8 U.S.C. § 1226(a). The BIA, however, has provided necessary guidance. Specifically, the BIA has held that, in a custody redetermination hearing under § 1226(a), "[t]he burden is on the alien to show to the satisfaction of the [IJ] that he or she merits release on

---

[1] In addition to her constitutional argument concerning the appropriate allocation of the burden of proof, Ms. Darko asserts three additional causes of action: (1) an INA claim asserting that requiring her to bear the burden at the bond hearing is contrary to the legislative history of the INA; (2) an Administrative Procedure Act claim asserting that placing the burden on detainees is arbitrary and capricious; and (3) a Due Process claim asserting a violation based on the IJ's failure to consider certain evidence at the bond hearing. Because of the Court's decision on the constitutional claim, it does not reach these latter three.

5

bond." *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006); *accord In re Adeniji*, 22 I. & N. Dec. 1102, 1116 (BIA 1999) (holding that "respondent must demonstrate that his release would not pose a danger to property or persons, and that he is likely to appear for any future proceedings"). The alien must show that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Guerra*, 24 I. & N. Dec. at 40. Since *Adeniji*, the BIA has repeatedly reaffirmed that the burden should be on the alien. *See In re Fatahi*, 26 I. & N. Dec. 791, 793 (BIA 2016); *Guerra*, 24 I. & N. Dec. at 40.

In addition, Congress has expressly barred federal court review of discretionary bond decisions:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to judicial review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). The Attorney General has delegated this authority to IJs. *See* 8 C.F.R. §§ 1003.19, 1236.1. The sole forum for an appeal from an IJ's bond determination is the BIA. *See* 8 C.F.R. §§ 1003.19(f), 1003.38, 1236.1(d)(3). Section 1226(e) thus insulates from federal judicial review any "discretionary judgment" of the Attorney General (i.e., the immigration courts) regarding bond. *Cf. Demore v. Kim,* 538 U.S. 510, 516–17 (2003) (noting that § 1226(e) bars federal court review of a "discretionary judgment" or a "decision" of the Attorney General).

As noted above, Ms. Darko has ostensibly received the process due under the statute—as that statute has been interpreted by the BIA—in that she was provided with a custody redetermination hearing at which she bore the burden, and an appeal of the IJ's decision to the BIA.[2] However, the Supreme Court has acknowledged that § 1226(e) does not bar constitutional

---

[2] To be sure, Petitioner also challenges the statutory scheme pursuant to which she was detained, but as previously noted, *see supra* note 1, the Court does not reach those challenges. In any event, the Court notes that in *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018), the Supreme Court, as a matter of statutory interpretation, expressly rejected

6

challenges to the immigration bail system.  *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841, (2018) (holding that challenges to "the extent of the Government's detention authority" are not precluded by § 1226(e)); *Demore*, 538 U.S. 510 at 517; *see also Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("[C]laims that the discretionary process itself was constitutionally flawed are 'cognizable in federal court on habeas.'" (citation omitted.)).  And it is precisely the constitutional challenge that Ms. Darko brings here, and to which the Court now turns.

> **B.  Constitutional Framework**

The Fifth Amendment's Due Process Clause forbids the Government from "depriv[ing]" any "person . . . of . . . liberty . . . without due process of law." U.S. Const. amend. V.  The Supreme Court has emphasized that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "Indeed, The Supreme Court has repeatedly reaffirmed that 'civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'"  *Linares v. Decker,* No. 18 Civ. 6527 (JMF), 2018 WL 5023946 at *2 (S.D.N.Y. Oct. 17, 2018) (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)); *see Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (holding that, in order to justify continued confinement of a mentally ill person, the State bears the burden of showing "by clear and convincing evidence that the individual is mentally ill and dangerous" (internal quotation marks omitted)); *Kansas v. Hendricks*, 521 U.S. 346, 353-56 (1997) (holding that a civil commitment statute satisfied the Due Process Clause in part because it "plac[ed] the burden of proof upon the State").

---

the notion that in a § 1226(a) proceeding, the government should be required to carry the burden by clear and convincing evidence.

7

Further, the fact that a person may not be a citizen of the United States, or that she may not be in the country legally, does not deprive her of the protections of the Due Process Clause. *See Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."); *Lora v. Shanahan,* 804 F.3d 601, 613 (2d Cir. 2015) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." (quoting *Zadvydas*, 533 U.S. at 693)), *vacated,* 138 S. Ct. 1260 (2018). Nonetheless, under certain circumstances, the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. The question that necessarily follows is what process is due.

**C.  Analysis**

In *Jennings*, the Supreme Court recently addressed the procedures required in a custody redetermination hearing under § 1226(a) and related statutes against a challenge that, absent a requirement for periodic bond hearings, the statutes would violate the Due Process Clause. *See Jennings,* 138 S. Ct. at 839. In proceedings below, the Ninth Circuit, instead of addressing the constitutional argument, employed the canon of constitutional avoidance and interpreted § 1226(a) to require "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." *Id.* at 847. But the Supreme Court rejected that interpretation, holding that "[n]othing in § 1226(a)'s text ... even remotely supports the imposition of either of those requirements." *Id.* (emphasis added). The Supreme Court reversed and remanded to the Ninth Circuit with instructions to consider the constitutional questions on the merits. *See id.* at 851. Thus, while the Supreme Court held that § 1226(a) does not mandate that a clear and convincing evidence burden be

8

placed on the government in bond hearings, it left open the question of whether the Due Process Clause does.

Since *Jennings*, a number of district courts have taken up the question left open by the Supreme Court, and there has emerged a consensus view that where, as here, the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified. *See Linares*, 2018 WL 5023946 at *3; *Sajous v. Decker*, No. 18 Civ. 2447 (AJN), 2018 WL 2357266, at *12 (S.D.N.Y. May 23, 2018); *Hernandez v. Decker*, No. 18 Civ. 5026 (ALC), 2018 WL 3579108, at *10 (S.D.N.Y. July 25, 2018); *Frederic v. Edwards*, No. 18 Civ. 5540 (AT), Docket No. 13 (S.D.N.Y. July 19, 2018); *Pensamiento*, 315 F. Supp. 3d 684, 692 (D. Mass. 2018); *Figueroa v. McDonald,* No. 18-CV-10097 (PBS), 2018 WL 2209217, at *5 (D. Mass. May 14, 2018); *Frantz C. v. Shanahan*, No. CV 18-2043 (JLL), 2018 WL 3302998, at *3 (D.N.J. July 5, 2018); *Portillo v. Hott*, No. 18-CV-470 (LMB) (MSN), 2018 WL 3237898, at *8 n.9 (E.D. Va. July 3, 2018); *Cortez v. Sessions*, No. 18-CV-01014 (DMR), 2018 WL 1510187, at *9 (N.D. Cal. Mar. 27, 2018).

The Court finds these cases persuasive. As the district court in *Linares* noted, given the important constitutional interests at stake, and the risk of harm in the event of error, it is appropriate to require the government to bear the burden, particularly in light of long-established Supreme Court precedent affecting the deprivation of individual liberty:

> The Government certainly has an interest in "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alteration omitted). At the same time, for detainees like Linares, who can face years of detention before resolution of their immigration proceedings, "the individual interest at stake is without doubt 'particularly important and more substantial than mere loss of money.'" *Singh*, 638 F.3d at 1204 (quoting *Santosky*, 455 U.S. at 756) . . . The balance of these interests, by itself, supports imposing the greater risk of error on the Government—specifically, by allocating to it the burden of proof.

2018 WL 5023946 at *3.

Of course, even prior to *Jennings*, at least two Circuit Courts had determined that in the immigration context, the Due Process Clause required the government to bear the burden at detention hearings. The Ninth Circuit in *Singh* held that, in § 1226(a) custody hearings, the Constitution mandates that (1) the burden must be placed on the government and (2) the standard is clear and convincing evidence. *See Singh*, 638 F.3d at 1203–05. The *Singh* court reasoned that "due process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* at 1203 (quoting *Casas–Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008)). In *Cortez*, 2018 WL 1510187, at *9, the district court held that *Singh's* due process analysis survived the Supreme Court's *Jennings* opinion, which expressly declined to address the constitutional question.

Following *Singh,* the Second Circuit also held, in the context of a detainee held under § 1226(c), which mandates detention pending removal for aliens convicted of certain crimes, that due process requires that such aliens be granted a bail hearing within six months of detention at which the government must establish by clear and convincing evidence that the immigrant poses a risk of flight or a danger to the community. *Lora*, 804 F.3d at 616. Following *Jennings,* the Supreme Court granted certiorari in *Lora* and vacated the Second Circuit's judgment. 138 S. Ct. 1260 (2018). However, while *Lora* is no longer binding authority, it does still carry "significant persuasive weight." *Sajous v. Decker,* 2018 WL 2357266 at *6.

As noted, *Singh* and *Lora* required the government to meet its burden by clear and convincing evidence. Thus, "in accordance with every court to have decided this issue," *Linares,* 2018 WL 5023946 at *5, the Court concludes that due process requires the government to bear

10

the burden of proving that detention is justified at a bond hearing under § 1226(a). In addition, in accordance with the overwhelming majority of courts to have decided the issue, the Court concludes that the government must bear the burden by clear and convincing evidence.

### III. CONCLUSION

For the reasons stated above, Ms. Darko's Petition is GRANTED. **Within seven calendar days of this Opinion and Order,** the Government shall take Ms. Darko before an immigration judge for an individualized bond hearing. At that hearing, the Government shall bear the burden to demonstrate, by clear and convincing evidence, that she is a danger to the community or a flight risk. Should the government fail to provide Ms. Darko with such a bond hearing within seven calendar days, the government shall immediately release her.

The Clerk of Court is directed to close this case.

It is SO ORDERED.

Dated: October 19, 2018
       New York, New York

_____
Edgardo Ramos, U.S.D.J.